UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| USAMA HOSNEY MOSTAFA ZAGHLOL, | Civil Action No. 16-5341 (SDW) |
| Petitioner, | OPINION |
| v. | |
| CHARLES GREEN, et al., | |
| Respondents. | |

**WIGENTON**, District Judge:

Presently before the Court is the petition for a writ of habeas corpus of Petitioner, Usama Hosney Mostafa Zaghlol, filed pursuant to 28 U.S.C. § 2241. (ECF No. 1). Following an order to answer (ECF No. 2), the Government filed a response to the Petition. (ECF No. 6). Petitioner thereafter filed a reply brief in support of his petition. (ECF No. 12). For the following reasons, this Court will deny the petition without prejudice.

**I. BACKGROUND**

Petitioner, Usama Hosney Mostafa Zaghlol, entered this country as a visitor in 1994 claiming to be a native and citizen of Egypt, with authorization to remain in this country for 30 days. (ECF No. 6 at 17). Petitioner, however, remained in the country long after that authorization had expired. (*Id.*). After marrying a United States citizen in 1995, Petitioner attempted to become a permanent resident, but his application for that status was denied in 1997 because Petitioner and his spouse failed to attend interviews scheduled by immigration officials. (*Id.* at 20). Petitioner then divorced his first U.S. citizen spouse and married another U.S. citizen in September 2001.

1

(*Id.* at 21). Petitioner thereafter filed another application for an adjustment of status to become a permanent resident. (*Id.*). In June 2004, however, that application was denied as immigration officials had determined that Petitioner made "material misrepresentations of fact" during his dealings with immigration officials as he had denied both his previous marriage and previous attempt at becoming a permanent resident in applying for an adjustment of status and was therefore ineligible. (*Id.* at 21-22). Petitioner appealed that decision, but the denial of his application was upheld by the Administrative Appeals Office in January 2006. (*Id.* at 27).

Petitioner was ultimately placed into removal proceedings. On September 7, 2006, Petitioner was ordered removed *in absentia* because he failed to attend scheduled hearings in his removal case. (*Id.* at 31). Petitioner, however, requested that his removal proceedings be reopened, which was granted by an immigration judge. (*See* Document 1 attached to ECF No. 6 at 2). While those proceedings were ongoing, Petitioner was arrested in December 2007 on sexual assault related charges. (*Id.*). In January 2012, Petitioner was convicted of perjury and false swearing, receiving a four year sentence. (*Id.*). Petitioner's original sexual assault and related charges, however, were apparently dismissed in February 2012. (*Id.*).

Following his sentencing, Petitioner was returned to immigration custody on January 18, 2012. (*Id.*). Petitioner was thereafter released on bond in May 2012. (*Id.*). In November 2012, however, Petitioner failed to appear for immigration proceedings, and was again ordered removed in absentia. (*Id.*). Petitioner then sought and was granted a reopening of his removal case, but was ordered removed in absentia a third time in July 2013 after he once again failed to appear for scheduled removal proceedings. (ECF No. 6 at 39). Petitioner subsequently filed another motion to reopen, but this motion was denied by an immigration judge in October 2015. (*Id.* at 42-45). Petitioner appealed, and the Board of Immigration Appeals (BIA) affirmed the denial of the motion

to reopen removal proceedings on January 29, 2016. (*Id.* at 71-72). Petitioner has remained in immigration detention awaiting his removal since that time. Although Petitioner has contended for some twenty years that he was a citizen of Egypt and immigration officials sought to remove him to that country for several months, during an interview on October 18, 2016, Petitioner admitted for the first time that he is in fact a native and citizen of Syria. (Document 1 attached to ECF No. 6 at 4). Since Petitioner made that admission, just under six months have passed during which Petitioner has remained detained pursuant to the final order of removal entered when the BIA dismissed his appeal in January 2016.

Petitioner filed his current habeas petition in September 2016, before he admitted to immigration officials that he is from Syria. (ECF No. 1). Although Petitioner asserted in his original petition that he is from Egypt, in his reply brief Petitioner acknowledges that he is, indeed, from Syria. (ECF No. 12 at 4-5).

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his

claims. *Spencer v. Lemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

**B. Analysis**

In his habeas petition, Petitioner contends that his continued immigration detention violates Due Process. In order to examine that claim, this Court must first determine the current statutory basis for Petitioner's detention. While 8 U.S.C. § 1226(c) governs the detention of aliens who have been convicted of a crime prior to their receipt of a final order of removal, that statute no longer applies once an alien receives a final order of removal. Once a final order of removal is issued, an alien enters a statutory 90 day removal period during which the Government is required by law to detain the alien. *See* 8 U.S.C. § 1231(a)(2); *see also* 8 U.S.C. § 1231(a)(1)(B)(ii). Thus, once an alien is subject to a final order of removal, his detention is governed by § 1231, unless and until he seeks review of his removal order by the Court of Appeals and is granted a stay of removal. *See* 8 U.S.C. § 1231(a)(1)(B)(ii). Here, Petitioner received a final order of removal on January 29, 2016, when the BIA dismissed his appeal of the denial of his motion to reopen his removal proceedings, and has apparently not sought review or a stay of removal from the Court of Appeals. He therefore entered the statutory removal period at that time. 8 U.S.C. § 1231(a)(1)(B)(1).

Because Petitioner is subject to a final order of removal and has not sought review and been granted a stay by the Court of Appeals, the propriety of his detention is controlled by the Supreme Court's decision in *Zadvydas*.[1] In *Zadvydas*, the Court observed that § 1231(a) requires

---

[1] Petitioner, in his reply brief, argues at length that he should be entitled to a bond hearing pursuant to the Third Circuit's decision in *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469 (3d Cir. 2015). That case, however, concerned the propriety of the detention of a criminal alien pursuant to 8 U.S.C. § 1226(c) *prior* to a final order of removal. *Id.* at 478. Because Petitioner has

4

the Government to detain all aliens subject to administratively final orders of removal during a statutory ninety day removal period. 501 U.S. at 683. The Court further held that the statute permits the Government to detain aliens beyond that ninety day period so long as their detention remains "reasonably necessary" to effectuate their removal. *Id.* at 689, 699. Based on these statutory provisions, the *Zadvydas* Court in turn held that an alien may be detained under § 1231(a) for a period of up to six months following his final order of removal during which his continued detention must be presumed to be reasonable and therefore not violative of Due Process. *Id.* at 701. Thus, where a removable alien has been detained under § 1231 for less than six months following a final order of removal, his challenge must be denied as premature. *Id.* Indeed, even after the presumptively reasonable six months has expired, an alien will only be entitled to relief where he can "'provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,'" after which the Government would be required to rebut that evidence to warrant further detention. *See Alexander v. Att'y Gen.*, 495 F. App'x 274, 276 (3d Cir 2012) (quoting *Zadvydas*, 533 U.S. at 701).

While the statutory removal period will normally expire after ninety days, the statute explicitly requires aliens who have been ordered removed to comply in good faith with attempts to remove them from the United States. *See* 8 U.S.C. § 1231(a)(1)(C). Specifically, the statute states that an alien's removal period "shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent" his removal. *Id.* "Courts have long held that this [statutory provision]

---

received an administratively final order of removal, he is not detained pursuant to § 1226(c), and *Chavez-Alvarez* provides no basis for his receipt of a bond hearing.

5

not only stands for the proposition that the removal period may be extended where an alien is the impediment to his own removal, but also that such an alien cannot demand his release under *Zadvydas* as he 'has the keys to his freedom in his pocket and could likely effectuate his removal by providing" the necessary information to the appropriate officials.'" *Bailey v. Lynch*, No. 16-2600, 2016 WL 5791407, at *3 (D.N.J. Oct. 3, 2016) (quoting *Pelich v. I.N.S.*, 329 F.3d 1057, 1060 (9th Cir. 2003)); *see also Callender v. Aviles*, No. 15-8579, 2016 WL 3792794, at * 3 (D.N.J. July 14, 2016). "Thus, '*Zadvydas* does not save an alien who fails to provide requested [information necessary] to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if [he] controls the clock.'" *Resil v. Hendricks*, No. 11-2051, 2011 WL 2489930, at *5 (D.N.J. June 21, 2011) (quoting *Pelich*, 329 F.3d at 1060); *see also Bailey*, 2016 WL 5791407 at *3.

In this matter, Petitioner received a final order of removal in January 2016. While, under normal circumstances, Petitioner's six month presumptively reasonable period would have begun to run at that time, because Petitioner did not inform the Government of his true citizenship until October 2016, Petitioner failed to act in good faith in cooperating with his removal, and his removal period was therefore extended and essentially tolled until he admitted his true citizenship on October 18, 2016. 8 U.S.C. § 1231(a)(1)(C). Because it was Petitioner who held the "keys to his freedom in his pocket" by keeping his nationality secret between January and October 2016, Petitioner's six month period of presumptively reasonable detention therefore did not begin to run until October 18, 2016, and Petitioner cannot credibly argue that his removal is not likely based on the ten months that passed before he made that admission to the government. *Bailey*, 2016 WL 5791407 at *3 (quoting *Pelich,* 329 F.3d at 1060). Because Petitioner's six month presumptively

6

reasonable period did not begin to run until October 18, 2016, and because fewer than six months have passed since that period began to run, Petitioner is still within the six month presumptively reasonable period, and is thus not entitled to relief from immigration detention at this time. *Id.*; *see also Zadvydas*, 533 U.S. at 701. Given Petitioner's conduct throughout his removal proceedings, and because Petitioner's six month presumptively period has yet to expire based on Petitioner's failure to inform the Government of his true citizenship until October 2016, his current petition is essentially premature, and must be denied without prejudice.

### III. CONCLUSION

For the reasons expressed above, this Court will deny Petitioner's petition for a writ of habeas corpus (ECF No. 1) without prejudice. An appropriate order follows.

Dated: April 12, 2017

*s/ Susan D. Wigenton*
Hon. Susan D. Wigenton,
United States District Judge